Good morning I may it please the court. Ada Flager on behalf of Channing Miller. Mr. Miller raises only one claim on appeal and we concede that it's reviewed for plain error. This case is about an understandable mistake that resulted in a plain error of well-established law. It should have been caught below but wasn't and consequently there's a reasonable probability that the sentence is more than one year longer than it should be. Plain error review gives this court the discretion to correct just this sort of error. I'll begin with prongs one and two of plain error, whether there was an error and whether it was clear under existing law. While Judge Lamel did not say I've forgotten the correct guidelines and I'm now going to impose a sentence under the incorrect guidelines, that's the only plausible explanation for what happened. It's exceedingly rare for judges to impose sua sponte upward variances. In fact judges impose upward variances at all. I thought that if there was a conflict between the oral pronouncement and the written pronouncement we go with the oral, right? Yes, your honor. Our argument is not that. I understand that but I mean we can just cut to the chase here because at some point you're going to get to the recent Supreme Court decision on plain error I suspect. And the point is that everything that I read from the sentencing colloquy indicates that the judge knew quite well that he was sentencing on a lower amount of drugs. And then he emphasized the recidivism and then he went back up. Now that was the oral colloquy and I agree it's the colloquy not the pronouncement. I think the clerical error if there was one was in the statement of reasons but that's just my, doesn't mean it doesn't have to be remanded but I just do not see anything in your argument that he was mistaken about the quantity of drugs. And we would disagree, your honor, that it's a clerical error in the statement of reasons and instead use it to show the... And the public defender acknowledged at the time that this larger, that the smaller amount was the right amount, right? Absolutely. And the public defender therefore it seems to me would have been quite attuned to the mistake but they certainly would have had their ears attuned if the judge had suddenly gone to the higher offense level on the basis of the prior amount of drugs. Absolutely, your honor, the public defender should have objected and did not in this case. I don't think that we can take from the silence the fact that all parties remembered at the end of the sentencing hearing that the guideline had changed. The court is required in pronouncing a above guideline sentence to note both that it's an above guideline sentence to explain the fact and the degree of the deviance from the guidelines and while it's theoretically possible that a judge could do this without ever acknowledging that there's a deviance or saying the word variance or saying the word deviation, it's just not the way a conscientious judge like Judge Lomel would impose such a sentence. And I think we pointed in our reply brief to the district judge bench book and again this is not, that's not binding on judges but we're in the public defender's offices in court every day and I think most of the public defenders can recite unfortunately in their sleep the script for an upward variance and it always involves acknowledging that there is in fact an upward variance. The sentencing. And why didn't the public defender wake up here and say, Judge, is that an upward variance? I don't know, your honor. The only explanation that I have is that this understandable error made by Judge Lomel, the fact that the public defender did not object is in fact more evidence that everybody in the courtroom had forgotten what the correct guideline range was by the end of the sentencing hearing. Certainly there was no objection but we recognize in having the plain error rule that we apply a, we allow an exception to the rigid forfeiture rule where we demonstrate that there is a plain error that's clear under law, affects substantial rights and then this court has the discretion to correct it. So certainly the public defender should have objected, he didn't, that's why we're on plain error review. But there's no doubt that the recidivism was an important factor to the judge in the sentencing, right? Absolutely, your honor. The recidivism seems to be the 3553A factor that the judge was most focused on. That, however, does not indicate either way whether or not this judge was imposing an upward variance because judges are required to consider those factors whether they're imposing a guideline sentence and deciding where in the guidelines to impose that sentence or they're imposing an upward variance where a judge is just saying, here are some of the 3553A factors I've considered and consider to be important. That doesn't indicate that the judge is imposing an upward variance and in fact in this case as the judge notes that the, one of the things driving the sentence is the prior conviction, he specifically references the guidelines calculation for criminal history. So one can infer that the thing driving the sentence that he's talking about is the guidelines calculation. And that's consistent both with real world practice and with the facts of this case where the defendant clearly had a prior criminal history. I guess my, I mean apart from whatever, I guess my bottom line would be we can't tell that there's a plain error. If there was an error, it would have affected the defendant's substantial rights. But under the circumstances, maybe this feeds back into my feeling that there's not a plain error. I'm not sure that, I think it's highly unlikely that the integrity and fairness of the proceedings are at risk because the whole sentencing transcript is how long? 20 pages I believe. So you're saying that between page one and maybe 15 minutes later, the parties forgot. I am, Your Honor. Not that it matters, but I think 30 minutes later. But yes, that is the argument that we're making here. I think it's important to distinguish between the prongs of plain error review. There is a debate with the government about whether or not there was a clear error in this case. However, if we are at prong four, which Your Honor had brought up about seriously affecting the fairness, integrity, or public reputation of proceedings, that's considering whether or not the error that has been identified merits reversal. So I think that to consider whether or not the error is clear at that stage double counts the plain error standard and allows improperly increases the burden there. Is this a case where it would be appropriate to do one of those limited remands that the Supreme Court mentions in the new, is it Molina, whatever that new sentencing case is? This court has previously rejected that sort of, I guess the opposite of a certified question back to the district court and has instead universally endorsed a full remand. In this case, a full remand would be most appropriate in order to allow for a full consideration of the guidelines. It's a significant error to impose a sentence with the wrong guidelines in mind and it infects the entire imposition of the sentence, as this court and the Supreme Court have said. So the proper remedy would be a full remand in order to allow the judge to engage in the proper considerations. And I think also in Molina-Martinez, the Supreme Court noted that the burden in reversing and remanding a sentencing hearing is far lower than vacating a conviction and sending back for a new trial. Here, that's particularly true. This was, as Your Honor has pointed out, a 30-minute sentencing hearing. A single witness was called for that. Well, but that's not true because it cuts into the district court's docket and there are often significant travel costs and security costs incurred on resentencing, especially when the public defender asked to re-sentence 40, you know, defendant sentenced to 40 months. Now, this was 10 years. This is a different matter, but we get a lot. I did take issue with the Supreme Court talking about the small number of resentencings because the Fifth Circuit does sentence 20% or more of all criminal defendants in the U.S., so the burden of a ruling like that falls quite disproportionately on the Fifth Circuit, which was reversed, of course, but. Yes, Your Honor, I think there is always a burden in reversing and remanding, and we're not challenging that that's not true. The argument is only that this court should consider the severity of the burden, as the Supreme Court said in Molina-Martinez, and here, while not non-existent, the cost is certainly less than it would be in most other cases. You allow for the possibility, I'm sure, that even if you go back, there's enough here that he could end up with the same sentence anyway, right? I'm not saying that's supposed to inform your argument. I'm just saying you acknowledge that, right? I acknowledge that it would be within the judge's power to impose this sentence and to impose an upward variance. I just don't think that we can tell from this record and from the things that the judge said whether or not he would impose the same sentence having considered the guidelines correctly. In fact, that's . . . Well, it may not be conclusive, but there's an argument you've made, even notwithstanding what you said, but the judge understood the bottom line here, and as I said, recidivism is really what drives it. I'm not saying that negates your argument, but it's not like . . . If he never said anything about anything else, yeah, it's a full open question, but to me it's just a judgment call there. Anyway, go ahead. I think in this case, the judge did consider recidivism. He did say that that was the driving factor behind the sentence, and then he imposed a sentence toward the top of what he believed the correct guidelines to be, so it's not entirely clear that on remand the judge would not impose a sentence toward the top of the correct guidelines. Certainly, Mr. Miller has a criminal history. It's been considered in the pre-sentencing report. It's part of the guidelines calculation, and here the things stated by the judge do not necessarily show that the criminal history would take this out of the heartland of cases for this sort of criminal history calculation. Mr. Miller has three prior convictions, two are prior drug possession. One was a prior drug possession with intent to distribute, and he got three points for each of those, and the two points for committing this offense while on parole. So recidivism is considered by the judge in determining where within the guidelines he intends to impose a sentence, but as the judge states in saying that the recidivism is one of the driving factors, he then cites specifically to the PSR, demonstrating that recidivism might be his consideration in where within the guidelines to put the sentence, but there he would impose an upward variance based on recidivism. And again, upward variances, particularly sua sponte. The government did not request an upward variance. There are no grounds for an upward variance identified in the PSR. Sua sponte upward variances are exceedingly rare. Upward variances of any sort in drug trafficking cases, the sentencing commission has said, are I think 0.4% of cases. The sua sponte variances are even a subset of those. So there certainly is an argument that the sentence imposed would be at the high end of the correct guidelines on remand. All right. I think we have your argument. Let's hear what the government has to say. Good morning. May it please the Court. My name is Ryan McLaren, and along with my co-counsel, Jeff Sandman, I represent the government on this appeal. As Judge Schoen said, this is a particularly challenging case to prove plain error because there is no error in the sentencing transcript. If you look at the sentencing transcript on pages 87 to 90, Judge Lomel has a lengthy discussion with the parties and probation about the drug amount and its implications on the guidelines. On page 88, Judge Lomel says, wait, wait, before you move on from that, let me get this right, this referring to the guidelines range. And then on page 92, importantly, Judge Lomel notes that the guidelines correction was to Miller's favor, or to his benefit, and then launches into his list of reasons why he's going to give him the 120-month sentence. And then starting on page 92, he focuses on the recidivism, as Chief Judge Stewart pointed out, his history of drug convictions, and his lack of responsibility for his family. So, looking at what the district court did, it stated the correct guidelines range, it gave reasons for its sentence. This is all that's required of the district court under Gall and under Rita, and under this court's interpretation of those decisions in cases like Fraga. The sentence should be affirmed under any standard of review because the judge got the guidelines range correct. But because this particular case is under plain error, opposing counsel's bases for its argument are especially flawed. First, opposing counsel cannot identify an error by the district court. This is pointed out by Judge Jones. The closest that opposing counsel comes is in suggesting that the district court needed to say the magic words of variance. This court has held that magic words, robotic incantations, checklist recitations are not required, and again, that's in cases like Fraga. The district court's reasons can be as long as they need to be. They can be short where the matter is relatively straightforward. All the court needs to do is listen to the arguments from the parties, listen to the evidence, get the guidelines range correct, and give sufficient reasons. Here, in addition to doing those things, the court also acknowledged that the guidelines correction was to Miller's benefit before going into its reasons for the sentence. And again, that's on page 92 of the record. Because the court was not required to say the magic words of variance, its failure to do so was not an error, let alone a clear or obvious error. Reversal in this case would require assigning an error to a district court who did everything that was required of him, and it would also hold the judge to a higher standard than those described by this court. So how do you explain the statement of reasons, which is at odds with the variance? Your Honor, I can't explain the errors that are in the statement of reasons, but as you know, that's how the case was held. For instance, in the Martinez case, which we cite on page 11 of our brief, the oral pronouncement at the sentence prevails over any inconsistencies with the statement of the reason. And in the oral pronouncement, Judge Lamel did everything that was required of him. So going to the statement of reasons, opposing counsel's reliance on the statement of reasons is misplaced. It's, again, well settled that where there's an inconsistency with the oral pronouncement and with the statement of reasons, the PSR, that the oral pronouncement prevails. The only reason to look at parole evidence, like the statement of reasons, in a case like this is to clear up confusion at the district court level when the district judge gets the guidelines range wrong. A good example of that is in the 28J case, Juarez. In that case, the district judge believed that the guidelines range was seven years to life, or that there was no guidelines range, when in fact the guidelines range was seven years to seven years. This court first determined that there was confusion because the district court got the guidelines range incorrect during the oral pronouncement, and then after determining that there was confusion based on the incorrect guidelines calculation, looked to the statement of reasons in the PSR to clear up that confusion. An incorrect statement of reasons, so looking at that case, an incorrect statement of reasons can be used to justify reversal of a bad oral pronouncement, but the government can find no case where the statement of reasons has been used to throw out an oral pronouncement that is otherwise error-free. If you take out opposing counsel's reliance on the statement of reasons, then they don't have a lot to go on. This case becomes more and more like Green and Oki, which are cases cited on pages 14 and 19 of our brief. Reversal in this case would set an example, reversal in this case based on the statement of reasons, would set an example for future cases that a scrivener's error in the statement of reasons can be used to throw out otherwise error-free oral pronouncements, would incentivize seeking out error in search of its existence. It would go against longstanding practice that the oral pronouncement and not-for-all evidence like the PSR or the statement of reasons prevails. Here, nothing in the oral pronouncement suggests an error, and finding an error would require reading extra facts into the sentencing transcript that just aren't there. Even if this court finds an error, it's not the type of error that justifies relief. As this court has said, those types of errors are those that would shock the conscience of the common man, serve as a powerful indictment against the justice system, and seriously call into question the competence and integrity of the district judge. This court can affirm on any basis supported by the record, and here the record shows that Miller's sentence was reasonable. As you stated, Chief Judge Stewart, there certainly seems to be enough in the record to support the reasonableness of Judge Lamel's sentence. Miller was a four-time offender. The court gave reasons for its sentence, and the sentence was well within the statutory maximum. And I should point out that in two of the cases cited by the government, Green and Oki, this court found sentences reasonable where the district court sentenced the defendant to 19 months and 30 months over the guidelines range, and in this case it was 15 months. This is not the type of rare situation where the court should exercise its discretion, but if it chooses to, I know Judge Jones, you had asked about what the remedy in this case should be and looked to the Melina Martinez case. I should point out that in the event that this case is reversed, that it's sent back down so Judge Lamel could clear anything up, that this would be a new rule for this court, at least as far as the government has looked into this. They were endorsed, sort of sidelined, endorsing the Seventh Circuit, which apparently will have a partial remand, not a remand for resentencing, but a remand for the court to explain what it did. Yes, Your Honor, and that is, from our perspective, the most that should happen in this case. If this court were to find an error, again, it's the government's position that there was no error, let alone a clear or obvious error, but at most that is what should happen here. That kind of remedy that the Supreme Court suggested in Melina Martinez. Is that forbidden by any of our precedent? Not that I know of, Your Honor, and it seemed to be somewhat of at least an implicit endorsement in Melina Martinez, but again, that would only be the case if this court were to find an error in Judge Lamel's sentence, and there's just no error, let alone a clear or obvious one. It just seems contorted to me in this context. I mean, frankly, I don't see the need to go to Melina Martinez to deal with this case. I mean, even if I didn't know about that case, and Judge Jones and I were both on the panel of it, but I don't see the need to go to it. I know what they said, but I just don't see how it impacts here per se. To me, we're back in the heartland of what we do in the sentence here. First, is there an error? If there is one, does it affect substantial rights? Yada, yada, yada. So this whole limited remand stuff, to me, it's either affirm it or send the thing back. Just let them send it. I mean, how hard is it? It took 30 minutes to do it. I don't even know what we'd say in a limited remand, you know, to not create unintended consequences and all that sort of stuff. Send it back and sentence it. Take a whole nother 30 minutes, seemingly. Anyway, that's not a question. Well, Your Honor, I think that that's a valid concern. What would a limited remand in this case even look like? And I think that that cuts right to the heart of if you look at the oral pronouncement, Judge Linnell did everything that was required of him. He got the guidelines range correct. He gave reasons for his sentence, and the sentence was reasonable. The only question . . . well, not the only question. The question that pops up, you know, is it an unstated variance, you know, and do we have cases that say, you know, if it's a variance at all, you know, that's the kind of thing that, you know, ipso facto, you know, needs to be plain, explicit, et cetera, you know what I'm saying? In other words, you can read it to say what he did was a variance, but he didn't utter, and as you say, whether it's talismanic, the word, you know, variance. And I don't know if we have any cases that say, you know, the judge does A, B, C, D, and H, but if G is a variance because that necessarily in the scheme of sentencing, you know, has more import than other things, then you follow what I'm saying? Then could it be stated or not? I don't know. I haven't seen any cases that say that. Correct me if I'm wrong, Your Honor, but it seems like what you're asking is, is there anything that kind of comes close to the magic words without necessarily getting into that? You know, it's an unstated variance, a phenomenon within sentencing that sort of has more import than, you know, other kind of factors that if we found an error here, you know, it should lean on the scale, so to speak, to go back down and, you know, and do it as opposed to the heartland where we have something oral said, something in the state of reasons is hornbooked that, as has been said, the oral reasons go. So we wouldn't even be discussing it. You see what I'm saying? I think I do, Your Honor, and I'm going to try to answer your question. If I don't, please let me know. But I think so I haven't found any. The government hasn't found any cases that kind of say exactly what you're asking about. I think the closest answer, the best answer I can give to that is to say, for instance, in this court's decision in Frege, analyzing Rita and Gall, looking at what the district court has to do in order for a sentence to be valid in a situation like this. In Frege, this court looked at Rita, looked at Gall, said that really the only things that the district court has to do is listen to the arguments of the parties, listen to the evidence, get the guidelines range right, and then give reasons for its sentence. The reasons can be as long as necessary. They can be short. If the matter is relatively simple, as it was in this case, the district court doesn't need to launch into this checklist recitation of the factors that it's considered. And that's exactly what the court did here. The court just listened to the arguments of the parties, listened to the witness who testified, gave his reasons for why he thought the sentence was appropriate, and then gave the sentence, and got the guidelines range correct. And I think that that's the most important thing. That's the fact that distinguishes this case from many of the cases cited by opposing counsel, that the court only got the guidelines range correct. He never said an incorrect guidelines range. He never showed any confusion about what the guidelines range should be. He only got the guidelines range correct. If there are no further questions. Okay. No. And some of what we're asking is just kind of thought questions, since, you know, we got this case and we got you here. It's not necessarily suggesting where we come out, but, you know, you're here. Okay. Other sides here is the best place to get it out. All right. I think we have your argument. Thank you. All right. Back to you, Mr. O. I have two points in response. First, I think it's important to distinguish what the claimed error in this case is and what it isn't. Here the error is that the judge inadvertently based the sentence on the original erroneous guidelines range. We've not raised an argument that the reasons given were inadequate. We've not raised a claim that the written statement of reasons trumped the oral statement of reasons. And we've not raised a claim that there is some sort of talismanic language. But in reality, judges imposing upward variances, particularly ones that are sui sante, will discuss the fact that they're imposing an upward variance. And that's because it's required under the statute, under 3553C2, and required under precedent from the Supreme Court and from this court. Rita instructed us that judges say more or are required to say more when they impose a sentence outside of. . . He did say more. They're not required to use the magic term variance, are they? No, Your Honor. And, again, our argument is not that the judge's reasons were inadequate. The argument is that the reasons given by the judge demonstrate that the judge had the wrong guidelines range in mind. I take it you were not present at the sentencing. I was not, Your Honor. The burden that would be imposed or the precedent that this case would set if a decision was rendered in Mr. Miller's favor would impose no new burden on judges who already are required to do this, to discuss why they've imposed a variance and already, in fact, do this. I would challenge that there is no case. I've been able to find no case where a district court imposed sua sponte, an upward variance, one that was not argued for either in writing or in the sentencing by the government and one that was not identified in the PSR. You can find no case where the court did not state that it was imposing an upward variance. And that's because judges . . . But you're not asking us to go that far. You're just asking us to say that he, in effect, imposed a variance based on his misremembrance of the appropriate guideline. Exactly, and using the adequacy of the reasons as evidence of that. Judges like Judge LaMalle. Judge LaMalle is a very experienced judge, very conscientious. Well, it's a big difference between just saying he forgot, on the one hand, and on the other hand saying the error was that he did not state explicitly that it was a variance. Absolutely, Your Honor. That would be significant new law for the Fifth Circuit. Absolutely, Your Honor. Okay. The argument that we're making is that experienced, conscientious judges like Judge LaMalle, in satisfying the requirements under the case law and under the statute, would not be able to get through that requirement without saying deviance, without saying variance, without in some way acknowledging that they're imposing an above-guideline sentence unless they were trying to. I mean, he's not writing a Faulkner novel. He's attempting to follow the guidelines, attempting to follow his obligations. And in practice, there are no cases where a judge imposes a sua sponte, upward variance, and nobody can tell that it's an upward variance. If somebody had walked into Mr. Miller's sentencing even a minute late, they would have no indication that this court was imposing not just an upward variance, but a significant upward variance, and a significant upward variance that was entirely consistent with the erroneous guidelines that were in the PSR in front of the judge, that were in the sentencing recommendation in front of the judge, and that were likely in the notes that the judge brought into the sentencing hearing. He got 15 months over what the correct guidelines would be, correct? Correct. I'm trying to interpret your look. He got 15 months over what the correct guidelines was. Exactly. Sorry. Never mind. This court in Moudikounian, and in several other cases, has recognized that a sentence that is of this magnitude significantly above the guidelines. He got 15 over what the correct guidelines was. He's got umpteen in the record about the guy's a four-time offender, and he's got this recidivism. I'm just struggling with how 15 months is so off the pale with the record that the person has in the grand scheme of this. I'm not dismissing your argument. I'm just trying to be candid, trying to look at this. It's 15 months over. I don't say 15 months is nothing. That's not like two days, but it's 15 months over the correct guidelines. A lot of this is torched back into his misremembrance, disconnect, but he reconnected with the wrong thing. To get to the point that said, of the correct guidelines, he's 15 months above that indecision. Is there a basis in looking at this that that 15 months is sustainable given the situation? In a plain error context. I think there are two responses to that first. First, this court has previously found in several cases that we've cited in our brief, including Muda Kunye, that similar variances above the correct guidelines were significant and merited reversal on plain error review. Well, that's even where the court said it was a variance. Where the court said it was. Was a variance. The court did not say that it was a variance. Or what made it significant. Are you suggesting that there might be a danger in our approving of silent variances? I think yes, Your Honor. How many cases would we be invited to find a variance to make it come out right? I think that is the case, Your Honor. And both the Supreme Court and this court have recognized that correctly calculating the guidelines is essential. And it's an essential first step. And that the correct guidelines should remain a framework throughout. And that's because the guidelines and the Sentencing Reform Act require that sort of uniformity. To affirm on this sort of record, which if it's an upward variance is one that's never, the Federal Public Defender's Office is in court every day. It's an upward variance that we've never seen before. There's a danger in the government and both lawyers sitting there. When this is going on, all trial judges rely on counsel sitting there. Not as potty plants, but sitting there. Paying attention to the sentencing. What's going on, etc. If there's, I mean it's not a chastisement, but I mean both, and I'm not alluding that somebody sold air here. That's not my point. But just, the sentencing is going on. And it's regular. Whatever the period of time, it was not noted. It's a little something that says, well, you know, how palpable is this? That the well-informed parties here were sitting here with the judge. He gives the sentencing. This doesn't give pause. It's, you know, there's kind of a duty all around here. And then to say, well, you know, the Republic is going to fall on a 15-month sentence. Above the correct guidelines. That somehow, you know, that's it. I mean, we get it. That's why we set the case for argument. Absolutely, Your Honor. There should have been an objection in this case. It was a mistake. And that's why this court is reviewing for plain error. But the fact that the error was unpreserved is not the end of the argument. I know. Like I said, that's why the case is argued today. As opposed to us just treating it the other way. To get the best arguments both sides have on, you know, an interesting proposition that's been raised to it. So we'll take a look at it. Give it our best shot. And let you know in due course where we come out. All right. Thanks for the briefing and argument. In this case and in all the cases, they, along with the non-oral argued cases, will be submitted. And with that, we'll stand adjourned until 9 a.m. in the morning.